IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.                                                                        Criminal Nos.  2:19-cr-47

KENT MAERKI, et al.,

       Defendants.

## DEFENDANTS' MOTION TO CONTINUE TRIAL

Come now the defendants, Kent Maerki, Aghee William Smith, Tony Scott Sellers, Thomas L. Barnett, and Norma Jean Coffin, through counsel, and hereby move for the entry of an order continuing the trial date in this case, which is currently scheduled for July 7, 2020.  The nationwide COVID-19 pandemic has affected the preparation of the case, impacted the ability to investigate and meet with clients and witnesses, and poses health dangers if trial proceeds in July. In support of this motion, defendants represent as follows:

1.  The *Maerki* defendants entered pleas of not guilty to the 19-count indictment on May 1, 2019, waived their rights under the Speedy Trial Act, and the Court made the appropriate findings and rulings regarding the setting of the trial date beyond the Speedy Trial cut-off date.  ECF Nos. 42, 46, 49, 51 and 54.  In November 2019, the Court joined the *Maerki* case with *Unites States v. Daryl Bank, et al.,* 2:17cr126 (E.D. Va.). ECF No. 85.

2.  All of the defendants, except Mr. Maerki, are on bond and have complied with their conditions of release.

3.  The discovery in this case is voluminous, and has been steadily reviewed by defense counsel. In addition to reviewing discovery, defense counsel has a duty to perform their own respective investigation and prepare for trial. Most of the defendants live outside of Virginia, as do most of the witnesses in the case. Mr. Smith and Mr. Barnett, for example, both live in Sacramento,

California, as do most of the alleged victims who invested through them in Dental Support Plus Franchise and in Janus Spectrum. Mr. Sellers lives in Idaho, as do most of his investors. Mr. Alcorn and Ms. Coffin live in Arizona, and many investors and witnesses are located there as well. Defense counsel need to travel to these other states to meet with defendants and to interview witnesses.

### COVID-19 Background

4. With the rapid development of COVID-19, a highly infectious virus, defense counsel are unable to investigate their cases effectively at the present time. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[1] Virginia Governor Ralph Northam ordered a state of emergency for Virginia and in an unprecedented move, on March 13, 2020, he ordered all Virginia schools (kindergarten through 12) to be closed for at least two weeks in an effort to limit the spread of COVID-19. By March 23, 2020, Governor Northam ordered that the schools close for the remainder of the school year and ordered all non-essential businesses to close for at least 30 days. On March 30, 2020, Governor Northam issued a stay-at-home Executive Order for the state of Virginia, which will be in effect until June 10, 2020. *See* Exec. Order 55. As of April 22, 2020, the new strain of coronavirus, which causes COVID-19, has infected over 2.5 million people worldwide, leading to at least 172,120 deaths.[2]

5. On March 12, 2020, the Federal Public Defender's Office transitioned to working from home. Because of the rapid infection rate and the importance of social distancing, the District Court for the Eastern District of Virginia has continued all non-emergency hearings until June 10, 2020. General Order 2020-12 (E.D. Va. April 10, 2020).

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[2] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).

2

6.      Virginia's stay-at-home order has become standard across the country. As of April 22, 2020, over 40 states and the District of Columbia had issued such orders, including California, Arizona, and Idaho.[3] On March 19, 2020, the California State Public Health Officer and Director of the California Department of Public Health ordered all individuals to remain in their home.[4] In just the city of Sacramento, there were 954 confirmed cases and 35 deaths from COVID-19 as of April 22, 2020.[5]

### **Impact on Client Meetings and Case Preparation**

7.      These restrictions have impaired the defense teams' ability and effectiveness to investigate the case. There is a demonstrable benefit and advantage to being in the same physical space to share ideas, ask questions, and exchange documents. In-person team meetings are essential to maintain a reliable and effective level of communication and collaboration.

8.      For all defendants except Mr. Maerki, counsel must travel to meet with them. Traveling to other states to investigate and prepare the defendants for trial is simply not feasible at this time. According to the Center for Disease and Control ("CDC"):

> CDC does not generally issue advisories or restrictions for travel within the United States. However, cases of coronavirus disease (COVID-19) have been reported in all states, and some areas are experiencing community spread of the disease. Crowded travel settings, like airports, may increase chances of getting COVID-19, if there are other travelers with coronavirus infection.[6]

Since symptoms may not appear for up to 14 days after exposure, travelers will not know which fellow travelers have been infected; in fact, many show no symptoms at all.[7]  Defense counsel is unable to

---

[3] https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html
[4] https://covid19.ca.gov/stay-home-except-for-essential-needs/
[5] https://www.saccounty.net/COVID-19/Pages/default.aspx
[6] https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html
[7] https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963

3

travel to various states in a safe manner, which would require traveling through crowded airports with security lines, traveling in a confined airplane, and going to cities with some of the highest levels of infection rates. Some defense counsel on this case have health problems that make them higher risk for complications, and some are also living in households with vulnerable individuals who require extra precautions, such that travel cannot be safely done. Agencies and airlines are also canceling travel, without prompting from the traveler. For example, in preparation for trial:

- Mr. Smith's attorneys and a defense investigator were scheduled to travel to Sacramento in April, May, and June, all of which are now canceled.
- Mr. Barnett's counsel was scheduled to travel to California in May, which has been canceled; a pending trip in June is likely to be canceled soon.

Other attorneys have chosen not to schedule travel for the next few months because of the clear health risks. Yet these meetings are critical for trial preparation.

In-person meetings enable counsel to review discovery with the client, as well as allow the client to assist counsel. It is allows counsel to gauge the client's reactions, as well as the client's understanding and appreciation of the legal issues and decisions that affect their life, and allows discussion of difficult and emotional topics. This cannot be accomplished through telephone calls, which are essentially aimed at maintaining an existing relationship, but which do not permit meaningful, essential interactive dialog and the critical opportunity to observe.

9. With Mr. Maerki incarcerated at Western Tidewater Regional Jail (WTRJ), his counsel Christian Connell has additional hurdles in meeting with his client. The jail has stopped allowing family and visitors into the jail, and has dramatically increased its use of technology to avoid bringing defendants to and from court in order to reduce the chances of introducing the virus into a confined space where social distancing is near impossible. While WTRJ will allow attorney visits, it does not

4

allow legal visits in the "contact room," hindering the ability to review discovery. Furthermore, the defense believes the responsible approach is a two-way street – limiting the potential that an attorney brings the virus into the jail or takes it out of the jail. With Mr. Maerki in his late 70s, it would be particularly reckless to risk seeing Mr. Maerki in person and introduce such an illness to him and all other inmates.

10. Aside from counsel's inability to travel and the associated dangers at this time, many of the defendants are in high-risk categories per the CDC.[8] All but Mr. Sellers are over 65 years old – specifically, Mr. Maerki, Mr. Alcorn, and Ms. Coffin are in their mid-to-late 70s; Mr. Barnett and Mr. Smith are in their mid-to-late 60s. Mr. Maerki, amongst others, also suffers from substantial health problems further increasing his risk. Meeting in person with high-risk clients is dangerous for their physical health and the health of their spouses.

## Impact on Case Investigation

11. The majority of witnesses – both lay witnesses and expert witnesses – that defense counsel need to interview live out of state or have health risks of their own. The Indictment names and describes witness "BC" as 70 years old, and describes MB and BB as in their late 60s when they invested. ECF No. 1, at 17. Some of the witnesses are advancing in age, and some are certainly in a high-risk category, such that defense counsel should not attempt to interview or meet with them in person. Yet, witness interviews are most effective and productive when done in person because the information is often personal and emotional, and must be done in person to be effective and competently undertaken.

---

[8] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

12.     This case will certainly involve experts, whether as a consultant to help defense counsel understand the issues or as an expert witness. Defense counsel have spoken with potential expert witnesses, on the phone or in person before COVID-19, but the determination of whether to hire an expert at all, or which potential expert to hire, requires meeting and evaluating experts in person. In-person meetings with experts allow the attorney(s) and the expert to review and discuss the same documents and texts, which are critical to a thorough understanding of the legal and technical issues. The defendants are effectively deprived of this expertise and proper due diligence by counsel when such meetings cannot occur without endangering the health of all involved.

13.     Even assuming that the stay-at-home order in Virginia is not renewed after the June 10th expiration, that only leaves three weeks for defense counsel to try to make up for the lost months of April, May, and June leading up to a July trial. To be clear, during these months, counsel continue to review discovery, which is substantial in volume and requires substantial time. But without the ability to conduct in-person meetings with clients and witnesses, there is not sufficient time to prepare properly for trial.

## Impact on Pre-Trial Motions and Trial

14.     Mr. Alcorn, through counsel, filed a motion to dismiss on November 10, 2019. ECF No. 81. The ruling on the motion has been deferred, ECF No. 117, until the Fourth Circuit decides a similar motion filed by Daryl Bank that is pending appeal. *United States v. Daryl Bank*, 2:17cr126, ECF Nos. 185, 212. It is undersigned counsels' understanding that oral argument was scheduled for April 7, 2020, but because of COVID-19, it has been rescheduled to sometime between April 27-May 1, 2020.

15.     Again assuming that the Court re-opens to the public in June, individuals will likely need to remain cautious and continue social distancing, particularly if they or a close family member

is in a high-risk category. This raises grave concerns for trial, where the jury pool will consist of dozens of local citizens to find a jury who can be empaneled for 6 weeks. One section of the courtroom will necessarily have 8 co-defendants, 9+ defense attorneys, and multiple marshals. The jury will need to listen to and observe the evidence for weeks, and deliberate in a confined space. If anyone were to test positive for COVID-19, all individuals in the courtroom would need to quarantine for 14 days. Given the health risks of the defendants, and the unknown risk factors for the jurors, this could be a dangerous situation leading to hospitalization, or worse.

## Memorandum of Law in Support

Whether to grant a motion for a continuance is within the broad discretion of the district court. *See, e.g. United States v. Cronic*, 466 U.S. 648, 662-66 (1984); *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983); and *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995). The defendants are not seeking a continuance simply for sake of delay. Rather, they seek additional time so that defense counsel may effectively investigate the case and thoroughly and properly prepare for trial.

Five of the six the defendants are in agreement with this motion. Mr. Alcorn, through counsel, does not join in the motion but notes that he does not object. In the joined case, the defendants, Daryl Bank and Billy Seabolt, through respective counsel, do not object. The government received a copy of this motion in advance, and states that it will file a response to this motion promptly with its position.

Because "the ends of justice served by the granting of a continuance outweigh the best interests of the public and the defendants in a speedy trial," counsel for the defendants ask the Court to grant this motion and continue the trial date. *See* 18 U.S.C. § 3161(h)(7)(A).

WHEREFORE, defendants respectfully pray for the entry of an order granting this motion.

7

Respectfully submitted,

KENT MAERKI, AGHEE WILLIAM SMITH, II, TONY SCOTT SELLERS, THOMAS L. BARNETT, and NORMA JEAN COFFIN

By: _____/s/_____

Keith Loren Kimball
VSB No. 31046
Supervisory Ass't Federal Public Defender
Attorney for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: keith_kimball@fd.org

Lindsay Jo McCaslin
VSB No. 78800
Assistant Federal Public Defender
Attorney for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: lindsay_mccaslin@fd.org

Christian Lee Connell
VSB No. 35000
Attorney for Kent Maerki
555 E. Main Street, Suite 1102
Norfolk, Virginia 23510
Telephone: 757-533-6500
Telefax: 757-299-4770
Email: christian.connell@outlook.com

Scott Frederick Hallauer
VSB No. 42829

8

Attorney for Tony Scott Sellers
520 Independence Blvd, Suite 210
Virginia Beach, Virginia 23452
Telephone: 757-474-0089
Telefax: 757-474-0692
Email: scott@hallauerlaw.net

Anthony Michael Gantous
VSB No. 78186
Attorney for Thomas L. Barnett
381 Edwin Drive, Suite 202
Virginia Beach, Virginia 23462
Telephone: 757-227-6963
Telefax: 757-227-6963
Email: anthony@amglawva.com

Gregory K. Matthews
VSB No. 28314
Attorney for Normal Jean Coffin
P.O. Box 5277
Portsmouth, VA 23703
Telephone: 757-692-3300
Email: gkmatthews@msn.com

## CERTIFICATE OF SERVICE

I certify that on this April 22, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Melissa E. O'Boyle, Esquire
Elizabeth M. Yusi, Esquire
Andrew C. Bosse, Esquire
Assistant United States Attorneys
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: 757-441-6331
Email: melissa.oboyle@usdoj.gov
        elizabeth.yusi@usdoj.gov
        andrew.bosse@usdoj.gov

/s/
Lindsay Jo McCaslin
VSB No. 78800
Assistant Federal Public Defender
Attorney for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: lindsay_mccaslin@fd.org