IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.                                                              Criminal Nos.    2:19-cr-47
                                                                               2:17-cr-126

KENT MAERKI, DAVID ALCORN,
AGHEE WILLIAM SMITH II, TONY
SCOTT SELLERS, THOMAS L. BARNETT,
and NORMA JEAN COFFIN,
                    Defendants,

and

DARYL G. BANK, and BILLY J. SEABOLT,
                    Defendants.

## DEFENDANTS' RENEWED MOTION FOR JOINDER, OBJECTION TO SEVERANCE, AND MOTION FOR CONTINUANCE

Come now the defendants, Kent Maerki, David Alcorn, Aghee Smith II, Tony Sellers,

Thomas Barnett, and Norma Jean Coffin, along with Daryl Bank and Billy Seabolt, by respective

counsel, and hereby renew the motion for joinder and object to severance by the Court.

Additionally, Daryl Bank, Billy Seabolt, David Alcorn, Aghee Smith II, Tony Sellers, Thomas

Barnett, and Norma Jean Coffin, move to continue the trial. Kent Maerki, through counsel, does not

join in the motion to continue and asserts his rights under the Speedy Trial Act.

Previously scheduled for November 3, 2020, this trial involves highly complex business

ventures and allegations against eight co-defendants and will likely have dozens of witnesses, with

experts likely to be summoned by both the government and the defendants. The defendants,

through counsel, have been strategizing and planning their defenses accordingly, with the belief that

all parties would be joined in reliance on the Court's November 18, 2019 Order joining the eight

defendants' cases. Defendants have been coordinating with attorneys for the co-defendants in the

cases as set forth elsewhere in this pleading. The planning over the last ten months, and longer,

involved preparing and interviewing potential witnesses by the attorneys involved, determining which experts might be hired and by which defendants, and streamlining the investigation through the coordination of all defense attorneys. Now, six weeks before trial, all of the defendants must abandon that reliance and preparation. While the defendants certainly understand the difficulties that COVID-19 presents for resuming jury trials, this severance is highly prejudicial to all defendants, and violates the defendants' Fifth and Sixth Amendment rights. Accordingly, the defendants move for joinder, object to severance, and with an exception of Kent Maerki, move to continue the jury trial.

In support of this motion, the defendants represent as follows:

### A. Summary of Relevant Procedural History

1.      Daryl Bank and Raeann Gibson were originally indicted on August 23, 2017. 2:17cr126, ECF No. 4. Mr. Bank was arraigned on November 15, 2017, entered a plea of not guilty and waived speedy trial. *Id.*, ECF No. 29. On April 19, 2018, Billy Seabolt was indicted through a superseding indictment filed in the same case. *Id.*, ECF No. 65. On May 25, 2018, a second superseding indictment ("the *Bank* case") was issued, which contains the current charges against Mr. Bank and Mr. Seabolt. *Id.*, ECF No. 105. Both were arraigned on June 6, 2018, entered pleas of not guilty, and waived speedy trial. *Id.*, ECF Nos. 112, 114. Both are out of custody and remain on bond. Defendant Gibson entered a guilty plea pursuant to a plea agreement and was sentenced on July 2, 2020, to 120 months in the Bureau of Prisons.  Trial was stayed in the *Bank* case pending resolution of Mr. Bank's interlocutory appeal, which was resolved on July 14, 2020. *Id.*, ECF No. 295.

2.      On March 21, 2019, Mr. Maerki and his five co-defendants were indicted ("the *Maerki* case"). 2:19cr47, ECF No. 1. On May 1, 2019, all six defendants entered pleas of not guilty and waived their rights under the Speedy Trial Act. ECF Nos. 42, 46, 49, 51 and 54.  All have

remained on bond for the entirety of the pending case, except Mr. Maerki who has been at Western Tidewater Regional Jail since December 12, 2019, when his bond was revoked and he was remanded to custody. Mr. Maerki now asserts his Speedy Trial rights.

3.      On November 14, 2019, the Court joined the *Maerki* case with the *Bank* case under Federal Rule of Criminal Procedure (FRCP) 13, recognizing the duplication of allegations, the overlap in witnesses, and the importance of presenting evidence in favor of the defense, including the testimony of co-defendants. *See* ECF No. 85.  A jury trial for all eight defendants was scheduled for July 7, 2020.

4.      On April 23, 2020, the defendants filed a motion to continue the jury trial because of the COVID-19 pandemic. ECF No. 118. On May 15, 2020, the Court granted the defendants' joint motion to continue the trial. ECF No. 121. The Court thereafter scheduled the trial to begin on November 3, 2020.  *See* May 26, 2020 docket entry. Trial was estimated to last 6 to 8 weeks. The trial was continued because the nationwide COVID-19 pandemic affected the defense lawyers' preparation of the case, impacted their ability to investigate and meet with their respective clients and witnesses, and of course, posed health dangers if the trial was to proceed as scheduled in July.

5.      On September 16, 2020, the Court held a status conference at the request of the defendants. The Court *sua sponte* severed the defendants, thereby resulting in multiple trials, ordering that the first trial begin on November 3, 2020, with defendants Daryl Bank, Billy Seabolt, and Kent Maerki. ECF No. 132. A second trial would consist of David Alcorn, Aghee Smith, and Norma Jean Coffin, and would begin shortly after the first trial finished, though no date was set. *Id.* A third trial would consist of Tony Sellers and Thomas Barnett, though no date was set. *Id.* All defendants objected to severance, and their objections were overruled. *Id.*

**B.  The Court's joinder of the *Bank* and *Maerki* cases in November 2019 was proper, and defendants renew the motion for joinder.**

The Federal Rules of Criminal Procedure 13 and 14 govern joinder and severance, respectively.  When distinct offenses have both a logical and temporal relationship, joinder is favored, particularly for conspiracy trials. *United States v. Lawson*, 677 F.3d 629, 638-39 (4th Cir. 2012). In the present case, numerous paragraphs in the two indictments are nearly identical, and the business ventures alleged in both indictments are the same. *See* ECF No. 72 (for comparison of paragraphs). Kent Maerki is listed as Conspirator #1 in the *Bank* indictment; and Daryl Bank is listed as Conspirator #1 in the *Maerki* indictment. Recognizing this clear repetition of evidence, expenses, witnesses (including the hardship of traveling across the country for multiple trials), and the ability of the defendants to present evidence from co-defendants in the case, the defendants moved for joinder, and the government later agreed.[1] *See* ECF No. 75. Ten months ago, the Court analyzed the significant overlap of the indictments and determined that joinder was appropriate. ECF No. 85. Furthermore, the Court recognized that "had the investigation … been completed sooner, the *Bank* Defendants and the *Maerki* Defendants would have been properly joined in a single indictment" under FRCP 8. Where, as here, the requirements of Rule 8 are met, a presumption arises in favor of joinder. *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987). It is "assum[ed] that closely related charges are being tried together" where "all facets of the crime can be explored once for all." *United States v. Velasquez*, 772 F.2d 1348, 1352, 1355-56 (7th Cir. 1985), *cert. denied*, 475 U.S. 1021 (1986). In the present case, the court found no prejudice to the defendants or the government in joining the cases for trial.

---

[1] Two defendants, Kent Maerki and Norma Jean Coffin, opposed joinder. ECF Nos. 76, 77. The Court found no prejudice by joining the defendants. ECF No. 85. After 10 months of preparation in reliance on the joinder Order, both now move to rejoin the defendants for all the reasons listed herein.

Indeed, the presumption for joinder is so strong that "[i]n practice, severe prejudice is required for an order of severance [to overcome Rule 8(b)] and the trial judge's refusal to sever is rarely reversed." *Id.* at 1352. According to the United States Supreme Court, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Examples of such a risk include: evidence that is probative of a defendant's guilt but is only admissible against a co-defendant; exculpatory evidence that would be available to a defendant if tried alone; or evidence of a co-defendant's wrongdoing that could lead the jury to conclude erroneously that the defendant was guilty. *Id.* Unlike these situations contemplated by the Supreme Court, the defendants in the *Bank* and *Maerki* cases did not move for severance. Instead, the defendants have proceeded with trial preparation relying on the joinder ruling.

What has changed between November 2019 and September 2020 is not newfound prejudice to defendants or a change in the indictments that would alter the overlap of evidence. The government did not move for severance nor did any of the defendants. What changed was the introduction and rapid spread of COVID-19 throughout the country. And while counsel is cognizant of the difficulties that COVID-19 has created, it does not override the rights of defendants in criminal cases.

Moreover, altering the trial scheme with little opportunity to brief the issue not only prejudices the defendants, but severing also threatens the defendants' constitutional rights. The defendants urge this Court to reconsider its decision to sever defendants and instead continue the trial of all eight defendants to 2021. Such a continuance would be consistent with this Court's

findings in other cases, that "due to the continued prevalence of and danger created by the COVID-19 pandemic and the circumstances of this case… the ends of justice served by setting a trial date beyond January 24, 2021, outweigh the best interest of the public and the defendant in a speedy trial." *See e.g.,* Exhibit 1, *United States v. Joffrion,* 2:20-cr-40, ECF No. 25 (E.D.Va. Sept. 23, 2020) (Order continuing trial beyond January 24, 2021, and excluding the continuation period under the Speedy Trial Act).

C. **Severance prejudices the defendants and violates their constitutional rights.**

FRCP 14 allows the court to sever defendants' trials "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." A judge may order severance *sua sponte. United States v. McManus*, 23 F.3d 878, 882-3 (4th Cir. 1994). However, the court must also consider prejudice to the defendants prior to severing. *Jackson v. United States*, 412 F.2d 149, 151 (D.C. Cir. 1969); *United States v. Cianciulli*, 476 F.Supp. 845, 846 (E.D. Pa. Aug. 30, 1979). Prejudice is a critical part of the analysis – it is even referenced in the heading of the rule, "Relief from Prejudicial Joinder." The heading and text of Rule 14 imply that prejudice must first exist, and if so, severance is a remedy. But prejudice did not exist when these cases were joined in November 2019 and does not exist now. To the contrary, severance creates prejudice to the defendants rather than removing it.

1. **Severing without notice violates the defendants' Fifth Amendment right.**

Severing *sua sponte*, so close to trial and with little to no opportunity to object or address legal issues, violates the due process clause of the Fifth Amendment. "[T]he fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962) (citing *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 246 (1944)). "An elementary

6

and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (string cite); *see also* Bradley Scott Shannon, *Some Concerns About Sua Sponte*, 73 Ohio St. L.J. 27, 28 (2012) ("Admittedly, the notion that federal court judges have at least some power to act *sua sponte* seems beyond dispute. Also seemingly beyond dispute are at least certain aspects of the process that should be employed in this context – for example, that the parties ordinarily should be given notice of the act contemplated by the court and an opportunity to respond thereto." (citing *Day v. McDonough*, 547 U.S. 198 (2006)).

There are inherent problems with severing *sua sponte* without consulting the parties. "Though federal judges generally bring a wealth of legal knowledge and experience to the adjudication of a case, they also have some substantial deficiencies vis-à-vis the parties. For one thing, judges never know as much about the case as the parties." Bradley Scott Shannon, *Some Concerns About Sua Sponte*, 73 Ohio St. L.J. at 34. "For this reason, a judge acting *sua sponte* might well take some action that makes little sense to the parties and that would not be taken if the judge had more information." *Id.*

With discovery in this case over one million pages, the parties in this case have substantially more information than what is set forth in the indictments and previously filed pleadings. That information clarifies the relationship between the co-defendants, informs the defenses that each defendant plans to present at trial, and illuminates the evidence that is needed to present that defense, including potential testimony from co-defendants. Additionally, the discovery makes clear that dividing certain co-defendants would only add to the jury's confusion instead of simplify the issues.

In contrast, *United States v. Ramirez-Barreto, et al*, Case No. 4:19-cr-47, is a recent example of a judge in this Court severing a 23-defendant case due to case management and logistical concerns stemming from the large number of defendants. In that case, the judge informed the parties that she intended to sever the cases and directed all defense counsel and the government to brief, in advance of a status conference, which cases they believe should be tried together and to suggest a time frame for trying each group of defendants.

In the present case, the parties were given no such notice of the Court's intentions and were caught completely by surprise by the Court's severance order. In addition, unlike in the present case, there was little concern in *Ramirez-Barreto* about overlapping evidence among the groups of defendants. *See* Govt. Status Hr'g Br., *U.S. v. Ramirez-Barreto, et al*, Case No. 4:19-cr-47, (ECF No. 827, filed Mar. 5, 2020). Also unlike the present case, defense counsel in *Ramirez-Barreto* did not develop defense strategies in reliance upon a prior joinder order or the expectation that their cases would be tried together. All counsel of course understand the unique concerns facing the Court, especially given the current health crisis.  At this late stage, however, the prejudice to the defendants in this case is so great that the Court must reconsider its severance order.

### 2. Severing co-defendants violates the Sixth Amendment and undermines effective assistance of counsel.

While the court has great latitude in decisions such as continuances and setting trial dates, an "insistence upon expeditiousness in the face of a justifiable request for delay" can violate the Sixth Amendment. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The Sixth Amendment protects not only the "right to confront the prosecution's witnesses for the purpose of challenging their testimony," but also "the right to present his own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to offer the testimony of witnesses, and to compel their attendance, if

necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Id.* While evidentiary rules and other constitutional rights may exclude evidence at trial, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (interal quotations removed).

In a case involving complex business and investment opportunities, a complete defense requires a full picture of the investments and the failures, not a snippet of the larger narrative. To provide that full picture, each of the defendants needs an opportunity to present evidence as well as the opportunity to question co-defendants who choose to testify on their own behalf.  The defendants have a legitimate and realistic need for the testimony of fellow co-defendants. *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983) (analyzing whether severance is appropriate where a co-defendant is more likely to testify in a separate trial rather than his own).

For example, the co-defendants in this case each have information about the businesses, but from different roles and perspectives. Some co-defendants are intimately familiar with the flow of money in various accounts, while others had no access to that information; some are very familiar with the investors and the marketing materials; some have specific knowledge of due diligence, including reliance on legal advice and compliance consultants; and some understand the experts and engineers hired with respect to spectrum and technology. To understand these business investments, including why they failed, the jury needs to understand each of these facets. Many of the co-defendants may only be able to testify to the piece they have personal knowledge of, but may have also relied on other co-defendants to propel the businesses to success or failure. For example, two salesmen in a trial alone will not be able to testify about the accounting and books to which they had no access, while a spokesperson will not be able to testify about the engineers involved in the

ventures. The defendants need their co-defendants to explain the investments, as well as the failures; but two or three co-defendants selected by the Court to be tried together – without notice or input from the defense – will not be able to present that full information to the jury.

While there is no guarantee that any one defendant will testify at trial, counsel for the defendants agree that these eight defendants are more likely to testify at their own trial than testify at severed trials. If subpoenaed to testify in any trial separate from his or her own, defense counsel would strongly advise their clients to plead the Fifth Amendment, invoking their right to remain silent. Some, if not many, of these defendants may in fact testify at their own trial, as evidenced by the times they have testified in prior proceedings, including before the U.S. Securities and Exchange Commission (SEC) and the Arizona Corporation Commission. The defendants in this case are more likely to waive their right to remain silent and testify before a jury in their own trial, to explain what went wrong. This testimony, as well as the ability to cross-examine the co-defendants about their role and knowledge of the investments, would provide exculpatory evidence for numerous, if not all, of the defendants.

Furthermore, the defendants have been planning and relying on the opportunity for a joint trial to call on and cross-examine co-defendants since this Court granted joinder. And for 18 months, the six defendants in the *Maerki* case have prepared their cases expecting the defendants to be tried together, since no motion for severance was ever made by counsel for the defense or the government. This reliance played a large part in defense strategy, and removing that just weeks before trial, drastically changes the nature of the trial, the evidence that is expected to come into trial, and the attorneys' ability to prepare and confront that evidence.

Per the Court's prior joinder order, which has been the law of the case since its entry, defense counsel have operated with certain expectations. It is imperative for the Court to understand

that because of the highly complex nature of this case and the numerous entities involved, defense counsel devised a plan in which certain lawyers would focus upon particular facets of the defense. For instance, certain attorneys were tasked with the primary responsibility to call and examine certain expert and fact witnesses. Likewise, certain attorneys were charged with focusing on a particular aspect of the government's allegations. This was necessary for efficiency's sake as well as because this case is so massive that a single attorney is hard-pressed to be fully conversant in each and every aspect of it.

For the past ten months, all counsel have relied upon the Court's order. To suddenly break the case into many separate trials mere weeks before the trial is scheduled to start fundamentally and unfairly alters the playing field. The Court's order is especially prejudicial to those defendants in the first group whose attorneys have precious little time to get up to speed on the intricacies of those aspects of the case for which they were not primarily responsible, and who will not have the benefit of a preview of the evidence and argument.

Additionally, severing with no notice creates problems with potential defense witnesses. Some witnesses who are critical to all defendants will now need to travel to Virginia from other states three times during a pandemic. This increases the likelihood that critical witnesses will get sick with COVID-19 from the travel after being forced to repeatedly sit in airplanes in close proximity to dozens of strangers, touching high-traffic surfaces throughout the airport, and staying in hotels during each trip.

Compounding that difficulty is that the second and third trials do not have trial dates set. Witnesses are unable to prepare for that travel. Defense counsel is unable to subpoena witnesses in advance to allow witnesses to plan ahead for travel, to make arrangements regarding caring for children who may be attending school at home during this time, or arrange to care for family

members whose health is at-risk from COVID-19. Potential expert witnesses are also unable to control their calendar or ensure that they are going to be available for a trial that may occur at an unknown time in the next three months. These witnesses, and defense counsel for that matter, have no guidance on days or weeks to block out on their calendar to avoid conflicts with other commitments.

Severing *sua sponte* without sufficient notice and with such a short time before the first trial jeopardizes and violates the defendants' Sixth Amendment right to call witnesses in their favor, to subpoena and compel witnesses to appear at three separate trials, and to provide a complete picture of the case and their defenses to the jury, rather than a vignette. There is also a likelihood that it could render defense counsel ineffective, potentially requiring a redo of the trial in the future.

D. **To protect defendants' constitutional rights and to provide sufficient notice and time to adequately prepare, the defendants request a continuance for a joint trial and request a specific trial date be set.**

Whether to grant a motion for a continuance is within the broad discretion of the district court. *See, e.g. United States v. Cronic*, 466 U.S. 648, 662-66 (1984); *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983); and *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995).  However, there are a number of relevant factors the court must consider:

> the amount of time needed for effective preparation, the amount of time actually available for preparation, the amount of time previously available for preparation and how assiduously the movant used that time, the extent to which the movant has contributed to his perceived predicament, the complexity of the case, the availability of assistance from other sources, the probable utility of a continuance, the extent of inconvenience to others (such as the court, the witnesses, and the opposing party) should a continuance ensue, and the likelihood of an injustice or unfair prejudice attributable to the denial of a continuance.

*United States v. Saccoccia*, 58 F.3d 754, 770 (1st Cir. 1995).

Here, the request for a continuance is not an attempt to delay trial. Neither the defendants nor the government requested severance, and the predicament was not caused by any of the

12

defendants' actions. But after many months of preparing a highly complex case with a high volume of discovery, the defendants are now faced with a complication created by COVID-19: that the court is not currently set up to accommodate an eight-defendant trial. While severing *sua sponte* may solve one problem, it introduces many more, including the violation of the defendants' constitutional rights. The defendants and defense counsel have spent the last ten months preparing diligently for a joint trial, including relying on the availability and likelihood of co-defendants testifying in trial, which would assist the other defendants.

An additional issue, brought up during the Court's brief status conference on September 16, 2020, involved the availability of the one courtroom designated for jury trials at this time. Mr. Seabolt is set to begin trial on November 3, and as the Court was made aware, counsel for Mr. Seabolt is scheduled to begin an unrelated jury trial in that one courtroom in October 2020 that may continue beyond November 3, 2020. Ms. Munn, counsel for Mr. Seabolt, candidly informed the Court that it was impossible to know when her trial would conclude, and therefore impossible for her to advise whether she (or the courtroom) would be available on November 3. As far as undersigned counsel is aware, there has been no resolution of this issue since the status conference, but Ms. Munn's trial is still set to begin sometime after October 5, 2020, and more than 100 subpoenas have been issued in that case. This unresolved date makes it even more challenging to issue subpoenas and advise witnesses and experts when they should be available to be present to testify.

While continuing trial would create some inconvenience, holding a trial three times would create more inconvenience for all involved. It would require witnesses for both the government and defense to travel across the nation during a pandemic, jeopardize their health and potentially their families' health upon their return home. And then to do it again twice more. One defense attorney

has already been contacted by a potential witness and informed that the witness's child has substantial health issues, the family has been avoiding the public since COVID-19 emerged, and the witness does not believe he or she can travel during this health crisis. Without a doubt, there will be more witnesses who are unwilling or unable to testify as a result of the ongoing pandemic.

Most recently, on September 24, 2020, the Court recognized through General Order 2020-21 that the health risks to all involved – defendants, court personnel, witnesses, and the public – require extending the use of video and teleconferencing for hearings. In issuing this Order, the Chief Judge found that:

> the average number of new daily COVID-19 cases in Virginia is currently plateaued at approximately 900 to 1,000 cases, a level nearly double the average number of new daily cases reported in Virginia when the CARES Act video conferencing authorization was last extended by this Court. Additionally, a state-by-state comparison of new cases per 100,000 residents reveals that Virginia is experiencing a greater number of new cases, per capita, than nearly half of the states in the nation.

*Id.* at 2. The Order further recognized that "every criminal proceeding conducted in our Courthouses is unique … and reveals a wide spectrum of recurring scenarios, some in which in-person proceedings are prudent and can be safely conducted, and others in which a defense attorney, judge, or other necessary participant, has elevated COVID-19 exposure risk factors." *Id.* at 5. This jury trial is far from a run-of-the-mill case. It involves eight defendants, most of whom are over 65 years of age; witnesses from around the country who must travel by plane; and witnesses who are elderly and have at-risk members in their home.

Based on the Court's intention to try the three cases consecutively, witnesses will also be traveling throughout the fall and winter – the exact timeframe when medical experts say that COVID-19 is likely to spike, "possibly at a catastrophic scale."[2]  Since some witnesses will be

---

[2] Joel Achenbach and Rachel Weiner, *Experts project autumn surge in coronavirus cases, with a peak after Election Day*, Wash. Post, Sept. 5, 2020, ("Despite millions of infections and more than 184,000 deaths, most people in the

coming from COVID-19 hot spots, it would likewise jeopardize the health of all involved in the case, including the jurors, and the community more generally as these witnesses would be traveling, staying in local hotels, and eating at local restaurants. These health concerns are compounded by the fact that many lay witnesses and defendants are over 65 years old, and are at high risk of serious illness and death if or when they contract COVID-19. Also, it would impose an unnecessary burden on this Court and its calendar: one trial will take seven or eight weeks, while three trials could take double or triple that amount of time.

As the Court is aware, since COVID-19 emerged in the United States, jury trials have been suspended, with the first jury trial in this district beginning just last week, on September 16, 2020. Despite trials starting to resume, some judges are deliberately setting jury trials in 2021 because of COVID-19 concerns, including complications with witnesses appearing. *See* Exhibit 1; *United States v. Joffrion*, 2:20-cr-40, ECF No. 25 (E.D. Va. Sept. 23, 2020) (Judge Novak and Judge Gibney excluding the period between September 14, 2020, and January 24, 2021, for speedy trial purposes because COVID-19 would not allow a safe and fair jury trial before that date, despite having only one defendant); *United States v. Smith et al*, 2:20-cr-69, ECF No. 32 (E.D. Va. Sept. 1, 2020) (analyzing the dangers of a jury trial from COVID-19 and continuing the case until January 2021).

As a viable and safer alternative, the Court can continue this case to spring 2021. Seven of the eight defendants are on bond, have complied with their bond conditions, and none are charged with violent offenses. They are not a risk of flight. The additional time would allow the Court to continue to redesign its courtrooms and procedures to accommodate this unprecedented

---

United States remain susceptible. 'A pandemic virus is different, because most of us do not have prior immunity to the virus… That means it's a lot more contagious than a typical virus that we get every year.'"), available at: https://www.washingtonpost.com/health/coronavirus-fall-projections-second-wave/2020/09/04/6edb3392-ed61-11ea-99a1-71343d03bc29_story.html

development. In the past months, the Court has redesigned one of the courtrooms to allow social distancing between jurors and parties, including installing plexiglass as barriers, and has utilized newer technologies including communicating by headsets. In the coming months, more courtrooms will be adapted and new procedures will likely be instituted to accommodate multi-defendant trials.[3] It would protect witnesses' health, as well as jurors and the parties, to reduce travel during a time of high infection rates. It would protect the defendants' rights, and with a specific trial date, all defendants would be able notify their potential lay and expert witnesses of dates they should anticipate being available for trial.

The defendants understand the Court's interest in this case moving forward on November 3, 2020, but severing *sua sponte* after ten months of joinder creates injustices rather than solves them. "[O]ur government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials. About them, we dare not become careless or complacent when that fashion has become rampant over the earth." *United States v. Ciancuili*, 476 F.Supp. 845 (E.D. Pa. Aug. 30, 1974) (citing *Kotteakos v. United States*, 328 U.S. 750 (1945)).

WHEREFORE, the defendants respectfully object to severance, renew the motion for joinder, and move to continue the trial.

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By: _____/s/_____

Lindsay Jo McCaslin
VSB No. 78800

---

[3] In addition, scientists across the world are diligently working on a vaccine. Though the timeline is speculative, it is priority.

Assistant Federal Public Defender

Keith Loren Kimball
VSB No. 31046
Supervisory Ass't Federal Public Defender

Attorneys for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email:  lindsay_mccaslin@fd.org
            keith_kimball@fd.org

James O. Broccoletti, Esq.
VSB No. 17869
Attorney for Daryl Bank
Zoby, Broccoletti & Normile P.C.
6663 Stoney Point South
Norfolk, VA 23502
Telephone: 757-466-0750
Fax: 757-466-5026
james@zobybroccoletti.com

Emily M. Munn, VSB #46390
Emily M. Munn, P.C.
Attorney for Billy Seabolt
233 East City Hall Avenue #330
Norfolk, VA 23510
(757) 619-1060
Emily@emilymunn.law

Christian Lee Connell
VSB No. 35000
Attorney for Kent Maerki
555 E. Main Street, Suite 1102
Norfolk, Virginia 23510
Telephone: 757-533-6500
Telefax: 757-299-4770
Email: christian.connell@outlook.com

Richard S. Yarow, Esq.
Va. State Bar No. 37807
Counsel for the David Alcorn

17

Richard S. Yarow, LLC
821 W. 21st Street, Ste. 208
Norfolk, VA 23517
(757) 337-3963 *Telephone*
(757) 686-0180 *Facsimile*
RichardYarow@gmail.com

Scott Frederick Hallauer
VSB No. 42829
Attorney for Tony Scott Sellers
520 Independence Blvd, Suite 210
Virginia Beach, Virginia 23452
Telephone: 757-474-0089
Telefax: 757-474-0692
Email: scott@hallauerlaw.net

Anthony Michael Gantous
VSB No. 78186
Attorney for Thomas L. Barnett
381 Edwin Drive, Suite 202
Virginia Beach, Virginia 23462
Telephone: 757-227-6963
Telefax: 757-227-6963
Email: anthony@amglawva.com

Gregory K. Matthews, VSB #28314
Gregory K. Matthews, PC
Counsel for Norma Jean Coffin
Post Office Box 5277
Portsmouth, VA 23703
Telephone: 757-356-5744
Telefax: 757-500-2540
gkmatthews@msn.com

18